United States District Court
Southern District of Texas
**ENTERED**
January 14, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| CRAIG DENNIS JOHNSON, JR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:21-CV-00018 |
| | § | |
| YOAKUM COMMUNITY HOSPITAL, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND RECOMMENDATION**

On April 22, 2021, Plaintiff Craig Dennis Johnson, Jr., filed this *pro se* lawsuit against Yoakum Community Hospital ("Yoakum"), the Texas Office of the Attorney General's Child Support Division ("OAG"), Ashley Diane Gibbs, William Old III, Micah Harmon, Daniel Peters Jr., Becky Perez, Timothy Pawlik, Jimmie Heiman, Mark Ivey, Adam Clark, Calvin Albrecht, Roderick Johnson, Sherry T. Henke, Stuart Fryer, the Lavaca County Sheriff's Office, Lavaca County, and the City of Hallettsville.[1]  In his complaint, Johnson raises several claims relating to the validity of his child support responsibilities and an incident that led to his arrest during a state court hearing.  (D.E. 1). Currently pending are: (1) a motion to dismiss by Yoakum (D.E. 18); (2) a motion to dismiss by Lavaca County, the City of Hallettsville, Harmon, Peters, Perez, Pawlik, Heiman, Ivey, Henke, Fryer, and Johnson (collectively, "Lavaca Defendants") (D.E. 44);

---

[1] Johnson also sued Eddie Vacarro, but subsequently voluntarily dismissed those claims.  (D.E. 48).

(3) a motion to dismiss from the OAG and Sklar (collectively, "OAG Defendants") (D.E. 47); (4) a motion to dismiss from Clark (D.E. 60); and (5) Johnson's motion to for leave to file an amended complaint (D.E. 63). The parties have also filed various responses and replies. (D.E. 20, 45, 49, 67, 68, 70, 73).

As discussed further below, it is recommended that: (1) Yoakum's motion to dismiss (D.E. 18) be GRANTED and all claims against Yoakum be DISMISSED with prejudice; (2) the Lavaca Defendants' motion to dismiss (D.E. 44) be GRANTED and all claims against the Lavaca Defendants be DISMISSED with prejudice; (3) the OAG Defendants' motion to dismiss (D.E. 47) be GRANTED and all claims against the OAG Defendants be DISMISSED with prejudice; (4) Clark's motion to dismiss (D.E. 60) be GRANTED and all claims against him be DISMISSED with prejudice; (5) all claims against Gibbs be *sua sponte* DISMISSED with prejudice for lack of jurisdiction; and (6) Johnson's motion for leave to file an amended complaint (D.E. 63) be DENIED as futile.

## I.  BACKGROUND

### a.  *Allegations in the Complaint*

Liberally construed, Johnson alleges the following. In November 2011 and November 2012, Gibbs gave birth to children at Yoakum. (D.E. 1 at 6). Johnson was the father. (*Id.*). Johnson asked hospital staff how he could be listed as the father on the birth certificate, and staff responded that he had to complete a form acknowledging his paternity. (*Id.* at 6-7). The hospital provided him with written notification of the benefits, rights, and responsibilities of paternity. (*Id.* at 7). Nonetheless, Johnson claims that the hospital

2

"scheme[d] to conspire against my rights and defraud me" by getting him "to diminish [his] capacity as biological father to become a legal father." (*Id.* at 6-7). Johnson contends that the hospital was also required to give him oral or video notice of the legal consequences, rights, and responsibilities that arise from signing an acknowledgment of paternity. (*Id.* at 7-8).

In 2014, Gibbs applied for child support services and identified Johnson as the father. (*Id.* at 8). Johnson believes this actually created a loan from the state that Gibbs is responsible for repaying, and that by attempting to obtain funds from him, she is working with the state to conspire against him and deprive him of his right to access property[2] and of his earnings. (*Id.* at 9). The state used the forms that Johnson signed at the hospital to establish his paternity over the two children. (*Id.*).

A state court hearing regarding the child support application was held on September 8, 2014. (*Id.* at 10). A state employee asked Johnson if he wanted to take a DNA test to determine paternity, but Johnson declined. Sklar, also a state employee, began asking Johnson questions about his earnings and employment. Sklar gave him a copy of the order to establish child support. Johnson asked whether it was mandatory, and Sklar said that it was. Johnson signed the form. (*Id.*). He alleges that Sklar violated his due process rights by inducing him into signing a contract without explaining the legal consequences and collection methods associated with it. (*Id.* at 10-11). Once Johnson realized what had

---

[2] Johnson refers to his children as his property, so it is unclear if he is referring to his right to access his children or his right to access his earnings. For example, he sought to file a document in state court requesting that his children be referred to "only as property" because "I believe [that they] are my property." (D.E. 4 at 78).

3

happened, he attempted to rescind his signature and withdraw from his child support responsibilities.  (*Id.* at 11).  In October 2014, the state notified Johnson's employer that some of Johnson's earnings must be withheld to satisfy his child support responsibilities, and the state did the same every time Johnson changed employment.  (*Id.* at 11-12).

In August 2016, Sklar sent a letter notifying Johnson that he was $497 behind on his child support responsibilities and that the state would take additional enforcement action, if necessary.  (*Id.* at 12).  Later in the month, another letter notified Johnson that he owed $2,573.21 in past due child support, a lien was placed on his bank account, and earnings were withheld from his paycheck.  (*Id.*).

In October 2016, Johnson picked up the children from Gibbs, but then never returned them.  (*Id.*).  Gibbs hired an attorney and attained a writ of attachment.  (*Id.*).  Throughout the first half of December 2016, people attempted to intimidate Johnson at his house by walking around and yelling through the front door, and Bexar County Sheriff's Office vehicles parked outside his house.  (*Id.* at 12-13).  However, Johnson never returned the children.  (*Id.* at 13).  Henke informed him over the phone that there was a court hearing on December 13, 2016.  (*Id.*).

Johnson attended the court hearing with his girlfriend, Andrea Hightower.  (*Id.*).  When the hearing began, the state judge, William Old, III, requested that Johnson approach the bench.  (*Id.* at 14).  Johnson denied that he was "Mr. Johnson" and claimed to be making a special appearance.  The court told him that, if he wanted to be heard, he needed to come within the bench.  Prior to doing so, Johnson wanted to say that he "would like all of [his] rights to be reserved and [his] property protected prior to crossing," but Old would not let

4

him finish.  Johnson would not cross the bench, so Old told him to be quiet and allowed Gibbs's lawyer to speak.  (*Id.*).  Johnson attempted to object, but Old again told him that if he wanted to speak, he needed to come within the bench.  (*Id.* at 14-15).  Johnson continued to make objections, and Old stated: "Mr. Johnson, I'm going to tell you one more time, I'll let you talk but you need to be in here."  (*Id.* at 15).  Johnson again denied that he was "Mr. Johnson" and instead stated that he was "the administrator" and was "commonly known as Craig," but that the court could call him CJ.  Old told him to come inside the bench. Johnson again refused.  Old again told him that if he would not come inside the bench, then he needed to sit down and be quiet.  When Johnson once again refused, Old told him that he needed to leave the courtroom.  Johnson responded that "a man can't order another man to do something."  Old responded that he was a district court judge and could, in fact, order Johnson to do something, but then stated that he was willing to work with Johnson if Johnson would work with him.  Johnson and Old once again went through the same discussion about the need to step inside the bench.  (*Id.* at 15-16).

After several more attempts to have Johnson come inside the bench, be quiet, or voluntarily leave, Old had him removed from the courtroom.  (*Id.* at 16).  At this point, Peters and Heiman grabbed Johnson's arms and physically removed him from the room despite his continued objections.  Hightower began to pick up Johnson's belongings, but in doing so dropped his cell phone, allowing another person in the gallery to notice that it was recording.  Old directed that the phone be confiscated, but Hightower refused to give up the phone, so Old directed Harmon to remove her from the courtroom.  (*Id.*).  Johnson stood outside the glass door to the courtroom and watched what was happening, but

5

Heiman and Peters pushed him away and arrested him.  (*Id.* at 17).  Harmon also told Perez to arrest Hightower.  None of the officers ever told Johnson or Hightower what they were being arrested for.  (*Id.* at 17-18).  Heiman and Peters escorted him outside to a truck, but Johnson grabbed the truck's grill and refused to go inside, so Peters punched his hand to make him release the grill.  (*Id.* at 18).  Heiman, Clark, Roderick Johnson, Peters, and Albrecht picked Johnson up and put him in the truck.  (*Id.*).

Heiman drove him to the Lavaca County Sheriff's Office.  (*Id.* at 19).  When they arrived, Heiman radioed in a request that a chair be brought out.  (*Id.*).  Various Lavaca County Sheriff's Office deputies and jailers searched Johnson, and then Heiman directed him to either walk or get in the chair.  (*Id.* at 19-20).  Johnson inquired why he was being kidnapped, and Heiman directed that he be put in the chair.  (*Id.* at 20).  The deputies grabbed him, placed him in the wheelchair, and strapped him into the chair.  Once inside a room, the deputies began to ask him where his children were, but Johnson did not respond. Johnson continually asked to be let go from the chair and for water, but the deputies all ignored him.  (*Id.*).  They also ignored his requests to speak to medical staff.  (*Id.* at 21). He was in the first room for an hour, and then was moved to a second room where Harmon, Pawlik, Vacarro, Perez, Albrecht, Peters, Heiman, and two other men were all waiting. Perez was holding something that Johnson believed to be a taser, but she said it was a recording device.  Harmon again asked where Johnson's children were, but Johnson would not answer any questions.  He was left in the second room for around an hour.  (*Id.*).  The handcuffs were removed, but Johnson was still strapped to the chair.  (*Id.* at 21-22).

6

Johnson was eventually allowed to speak to Hightower, and Hightower was released. (*Id.* at 22). However, Johnson was not released and was told he would not be able to speak to a magistrate until the next day. (*Id.* at 22-23). The next morning, Johnson again refused to answer any questions and went through the intake process. (*Id.* at 23). He then spoke with Ivey, a magistrate, who told him that he was under arrest for hindering court proceedings, resisting arrest, and failure to identify himself. (*Id.*). Perez took Johnson back to the cell and asked if he wanted to make a phone call to attempt to pay his bail, but he could not pay bail. (*Id.* at 23-24). He remained in custody from December 13 through December 16, and was billed $5,000 an hour. (*Id.* at 24).

While he was in custody, Gibbs and other random people from social media threatened his home and property. This included making social media posts about Johnson's arrest, his address, and information about Gibbs's attempts to recover their children. She also posted flyers throughout San Antonio about the missing children. (*Id.*).

After Johnson was released from custody, he wrote Harmon, Heiman, Albrecht, Old, Perez, Ivey, the Lavaca County Sheriff's Office, and the City of Hallettsville to inform them that they had violated his rights. (*Id.* at 25). In January 2017, Gibbs applied for a temporary restraining order and a modification of possession and access rights to the children that would bar Johnson from interacting with their children. Old issued the temporary restraining order and set a hearing date for a permanent restraining order in February 2017. In the meantime, Johnson filed a civil suit in state court against Sklar and another woman, but Henke returned it to him unfiled because he had written "In the Johnson Court; Court of Record at the 25th and 2nd [] District court my word is my bond"

7

on the documents.  (*Id.*).  In February 2017, the state intercepted $1,898 from Johnson's tax return to satisfy part of his past due child support.  (*Id.* at 26).

Johnson attended the hearing before Old on February 28, 2017.  (*Id.*).  However, he alleges that Old was not acting as a judge at the time, but rather as a private contractor, and that all of the court employees violated various rights by allowing child support proceedings in family court and fraudulently pretending it was a district court.  (*Id.* at 26-27).

On April 8, 2017, Johnson returned the children to Gibbs.  (*Id.* at 28).  While on his way home, he was pulled over for rolling through a stop sign, although Johnson claimed that he "was not operating under the [T]exas driver[']s license at that time, just exercising his right to use the road to go from point a to point b without being disturbed."  Surprisingly, despite his assertion of this right,[3] the officer cited him for violating a state statute.  Johnson was arrested on an outstanding warrant and was held until May 4, 2017.  The charges related to the previous incident in the courtroom, and Fryer prosecuted two of the three charges.  (*Id.*).  Johnson agreed to a plea deal and community supervision, however, he alleges that Fryer maliciously prosecuted him and he was wrongly accused.  (*Id.* at 28-29).

Johnson alleges that no form of immunity applies to any of the defendants, although he does not say why.  (*Id.* at 29).  He also alleges state law tort claims for assault and malicious prosecution under the Texas Tort Claims Act, and seeks various types of monetary damages, along with injunctive relief.  (*Id.* at 29-32, 51-54).  In sum, Johnson

---

[3] This is not a legally recognized right.  *See generally* U.S. Const.; Tex. Const.

seeks "$13,000,000 in gold or silver coin." (*Id.* at 54).  However, if no gold or silver coin is available, Johnson would graciously accept his $13,000,000 in "U.S. commercial debt notes." (*Id.*).

> *b.  Attached Evidence*

In relevant part, Johnson submitted the following documents in support of his complaint:

- Several documents indicating that hospital staff are required to inform new parents orally and in writing about the rights and responsibilities of paternity establishment. (D.E. 4 at 3-5).

- An explanation of who can apply for child support. (*Id.* at 6).

- An explanation of what a voluntary acknowledgment of paternity is. (*Id.* at 7).

- A federal government document discussing how states must create an enforcement procedure for child support programs. (*Id.* at 19-21).

- Copies of the two acknowledgment of paternity forms that Johnson signed at the births of his children. (*Id.* at 22-23).  The forms state that, under the penalty of perjury, Johnson acknowledged that he was "given written and oral notice of: the benefits of having paternity established; the availability of paternity establishment and child support services; and the legal consequences of, the rights and responsibilities of, and the alternative to signing this acknowledgment." (*Id.*).

- A letter that he sent to Yoakum in March 2018 in which he states that he was not afforded the necessary safeguards because hospital staff did not explain or take questions about the acknowledgment of paternity. (*Id.* at 24).  The CEO of the hospital responded that "[a]t the time of signature, staff explains the document, asks if either party has questions, and provides both parties with a copy of the Acknowledgment of Paternity including the benefits, rights, and responsibilities. As you acknowledge, you signed the documents in question, therefore your claim of document fraud … is not valid." (*Id.* at 26).

- All of the documents from the state court child support proceedings, including the state's "Original Petition in Suit Affecting the Parent-Child Relationship," the relevant notices of hearings and citations, and the court's orders. (*Id.* at 29-48).

Johnson signed the court's September 8, 2014, order establishing each parent's rights and his child support responsibilities.  (*Id.* at 48).

- A Congressional Research Service report on the $25 annual user fee for child support enforcement.  (*Id.* at 49-54).

- Copies of various notices and affidavits that he filed contesting his responsibility to pay child support.  (*Id.* at 55-60).

- The state's letters informing him that his child support payments are past due and that liens have been filed.  (*Id.* at 67-70).

- The writ of attachment commanding any sheriff or constable to take Johnson's children and return them to Gibbs, along with documents and notes related to their failed attempts to do so.  (*Id.* at 72-74).

- Notices and documents that Johnson attempted to file in the state court proceedings following the writ of attachment.  (*Id.* at 75-85).

- Incident reports and other documents related to his arrest at the courthouse.  (*Id.* at 86-102).

- Screenshots of social media posts and flyers made by Gibbs.  (*Id.* at 103-118).

- The temporary restraining order that Gibbs obtained against him regarding the children and the subsequent order to modify the parent-child relationship.  (*Id.* at 130-33).

- The complaint that Johnson attempted to file against Sklar and another woman in state court, along with related documents.  (*Id.* at 134-53).

- A notice from the Department of Treasury that Johnson's tax refund was applied to his past due child support responsibilities.  (*Id.* at 154).

- A contract between the Office of the Attorney General and Lavaca County to cooperate with regard to creating a registry of child support cases.  (*Id.* at 156-79).

- Documents related to his arrest and subsequent incarceration in April and May 2017.  (*Id.* at 184-91).

- Documents related to his criminal charges and convictions for hindering an official proceeding and obstructing an arrest.  (*Id.* at 192-97).

- Documents related to his release on bond.  (*Id.* at 198-239).

### c.   *Procedural History*

Johnson filed his complaint on April 22, 2021.  (D.E. 1).  He subsequently sought entry of default against 13 defendants: Clark, Old, the City of Hallettsville, Henke, Johnson, Lavaca County, Perez, Albrecht, Heiman, Harmon, the Lavaca County Sheriff's Office, Ivey, and Pawlik.  (D.E. 27, 28, 29, 30, 31, 32, 37, 38, 39, 40, 41, 42, 43).  However, the undersigned recommended denying these motions because Johnson did not properly serve the defendants.  (D.E. 52).  The District Court adopted the M&R on October 1, 2021, and ordered Johnson to re-serve any defendants who had not waived a service-related argument.  (D.E. 69).

## II.   MOTIONS TO DISMISS

### a.   *Yoakum's Motion Under Rule 12(b)(1)*

In its motion to dismiss, Yoakum argues that this Court lacks jurisdiction because there is no federal-question jurisdiction or diversity jurisdiction.  (D.E. 18 at 3-5).  As to federal-question jurisdiction, Yoakum contends that Johnson's complaint does not even broadly explain how any of Yoakum's actions violated federal law, but instead alleges that he asked how to be included on the birth certificate and then voluntarily signed the necessary forms.  (*Id.* at 3-4).  As to diversity jurisdiction, Yoakum asserts that there is no diversity between the parties because both Johnson and Yoakum are citizens of Texas.  (*Id.* at 4-5).

Johnson responds that this Court has jurisdiction because his due process rights were violated.  (D.E. 20 at 3).  He argues that he did not voluntarily sign the acknowledgments of paternity because he did not know the legal consequences when he signed them.  (*Id.* at 4-5).

Yoakum replies that it is not a state actor and cannot be liable under 42 U.S.C. § 1983 for violating Johnson's rights.  (D.E. 45 at 3-5).  Lastly, Yoakum reiterates that there is no diversity jurisdiction.  (*Id.* at 5).

Federal district courts have jurisdiction over cases arising under the Constitution, federal laws, treaties of the United States, or cases involving diversity of citizenship.  28 U.S.C. §§ 1331, 1332.  The burden of establishing federal jurisdiction lies with the plaintiff.  *Butler v. Dallas Area Rapid Transit*, 762 F. App'x 193, 194 (5th Cir. 2019).

A party may assert the defense of lack of subject-matter jurisdiction in a Rule 12(b)(1) motion. Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case."  *See Home Builders Ass'n v. Miss, Inc. v. Maddison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  A case may be dismissed under Rule 12(b)(1) based on any of: (1) the complaint; (2) the complaint supplemented by undisputed facts in the record; and (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

Federal subject-matter jurisdiction "exists when a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *See*

12

*Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (internal quotation marks omitted). The basis of this jurisdiction must be affirmatively and distinctly alleged and cannot be established argumentatively or through inference. *Ill. Cent. Gulf. R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983).

In relevant part, diversity jurisdiction exists where the matter in controversy exceeds $75,000 and the suit is between citizens of different states. 28 U.S.C. § 1332(a)(1). A corporation is a citizen of every state in which it is incorporated and the state where it has its principal place of business. *Id.* § 1332(c)(1). Complete diversity is necessary, meaning that every party on one side of the controversy must be citizens of different states than every party on the other side. *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). Diversity jurisdiction must be "distinctly and affirmatively alleged." *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 397 (5th Cir. 2009). The plaintiff's failure to adequately allege the basis for diversity jurisdiction requires dismissal. *Stanfford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991).

To raise a viable claim under 42 U.S.C. § 1983, the plaintiff must show that a state actor infringed his constitutional rights. *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). In order to show that a private entity is acting under state law, the plaintiff must show: (1) that there is a close nexus between the regulations imposed by the state and the challenged action of the regulated entity so that the action may be fairly attributable to the state; (2) the state exercised coercive power or has provided significant encouragement of the private entity's actions; or (3) the private entity has exercised power traditionally held by the state. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Receipt of

13

state funds does not establish a close nexus. *Herwald v. Schweiker*, 658 F.2d 359, 362 (5th Cir. 1981).

Here, this Court lacks jurisdiction over Johnson's claims against Yoakum. First, as to diversity jurisdiction, Johnson alleges that every defendant is a citizen of Texas. (D.E. 1 at 2). Thus, his pleadings do not show that there is any diversity in this case, much less complete diversity. *McLaughlin*, 376 F.3d at 353. Second, as to subject-matter jurisdiction, Johnson's federal claims against Yoakum are best construed as arising under § 1983 because he contends that Yoakum violated his rights under the Constitution. (D.E. 1 at 32-33). However, in order to raise a viable claim under § 1983, Johnson must show that a state actor infringed his constitutional rights, and Yoakum is a private entity. *Doe*, 66 F.3d at 1406. A private entity can only be held liable under § 1983 in three specific contexts, and Johnson's allegations do not establish that any of these contexts exist here. First, he has not shown a close nexus between any regulations imposed by the state and Yoakum's actions. The only action that Johnson challenges in his complaint is Yoakum's presentation of a paternity acknowledgment form, which Johnson asked for. (D.E. 1 at 6-8). He also generally alleges that Yoakum receives state funds, but receipt of state funds alone does not establish a close nexus. *Herwald*, 658 F.2d at 362. Further, Johnson has

not alleged that the state exercised any coercive power over Yoakum's actions, nor has he

alleged that Yoakum was exercising any power traditionally held by the state.[4]

Ultimately, Yoakum was the hospital in which Johnson's children were born, and

he signed two paternity acknowledgment forms, at his own request, while at the hospital.

These factual allegations do not establish that Johnson can raise any § 1983 claims against

Yoakum, not has he alleged any other basis that could support the exercise of federal

subject-matter jurisdiction.  Accordingly, his claims against Yoakum should be dismissed

for lack of jurisdiction.

### b.   *Lavaca Defendants' Motion Under Rule 12(b)(6)*

In their motion to dismiss, the Lavaca Defendants contend that Johnson's tort-based

claims and claims under § 1983 are subject to a two-year statute of limitations.  (D.E. 44

at 4).  Further, they argue that the last possible date any of them had any involvement with

Johnson was when his community supervision ended on June 28, 2018.  (*Id.*).  Accordingly,

---

[4] It is also worth noting that Johnson's filings follow the patterns and arguments of the "sovereign citizen movement," which the Fifth Circuit has described as "a loose grouping of litigants, commentators, and tax protesters who often take the position that they are not subject to state or federal statutes and proceedings." *United States v. Weast*, 811 F.3d 743, 746 n.5 (5th Cir. 2016).  In accordance with these beliefs, Johnson inserts commercial and contractual law concepts in places they are inapplicable, makes allegations that becoming "legal father" diminished his capacity as a "biological father" and other similar references to being a "man," insists on referring to this as "the Johnson Court" and "a court of record," indicates that he has a right to drive on the roads without a license, refers to himself as "prosecutor" and the defendants as "wrongdoers," and submitted his own list of rules that he believes will apply in these proceedings, among other examples. (*See generally* D.E. 1; D.E. 1-4 at 1-4).  As stated by other circuits, such claims, whether the petitioner considers himself a sovereign citizen or not, "have no arguable legal basis and are patently frivolous." *Henry v. Fernandez-Rundle*, 773 F. App'x 596, 597 (11th Cir. 2019) (citing *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011)).

15

they argue that Johnson's claims are barred by the statute of limitations because he was required to raise them within two years of June 28, 2018, but failed to do so. (*Id.* at 4-5). They also argue that the Lavaca County Sheriff's Office is not a separate and distinct corporate entity, and therefore cannot engage in litigation independent of Lavaca County. (*Id.* at 1 n.1). The Lavaca Defendants attached several documents relating to Johnson's arrest and subsequent court proceedings. (D.E. 44-1).[5]

Johnson has not responded.

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Claims under § 1983 are subject to the general or residual statute of limitations for personal injury actions in the forum state. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Texas, a two-year statute of limitations applies. Tex. Civ. Prac. & Rem. Code § 16.003(a). Malicious prosecution claims are subject to a one-year statute of limitations. Tex. Civ.

---

[5] Typically, when ruling on a Rule 12(b)(6) motion to dismiss, courts are limited to the contents of the pleadings and any attachments. *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). However, courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013). In the complaint, Johnson references his arrest and the criminal prosecution against him, and these facts are integral to his claims against the Lavaca Defendants. (D.E. 1 at 13-24). Thus, the associated arrest, incarceration, and court records that the Lavaca Defendants attached to their motion to dismiss can be considered without transforming the motion into a motion for summary judgment.

Prac. & Rem. Code § 16.002.  This time limit begins to run when the prosecution is terminated in favor of the accused.  *Heck v. Humphrey*, 512 U.S. 477, 489 (1994).

Here, as an initial matter, the Lavaca County Sheriff's Office should be dismissed as a defendant because it is not a separate and distinct corporate entity, and therefore cannot engage in litigation independent of Lavaca County.  *See Darby v. Pasadena Police Dept.*, 939 F.2d 311, 313-14 (5th Cir. 1991).  Conveniently, Johnson has already included Lavaca County as a defendant.

Johnson's claims against all other Lavaca Defendants are barred by the statute of limitations.  In his complaint, Johnson alleges that he was arrested on December 13, 2016, by officers of Lavaca County, the City of Hallettsville, and other local agencies following a disagreement at a state courthouse.  (D.E. 1 at 13-19).  He was released on December 16, 2016.  (*Id.* at 24).  He was subsequently arrested again on April 8, 2017, following a traffic stop because he had an open warrant.  (*Id.* at 28).  On May 4, 2017, he pleaded guilty to a charge of hindering proceedings by disorderly conduct, arising from the December 2016 incident at the courthouse, and was sentenced to one year of community supervision.  (*Id.* at 28-29).  He alleges that his community supervision ended on June 28, 2018.  (*Id.* at 29). None of his claims against any of the Lavaca Defendants are connected to anything after this date.  (*Id.* at 39-51).  Johnson's federal claims are best construed as arising under § 1983, and are therefore subject to the applicable statute of limitations for personal injury claims in Texas.  (*See id.*); *Owens*, 488 U.S. at 249-50.  This means that Johnson had two years from the day his cause of action accrued to raise both these federal claims and his state claims.  Tex. Civ. Prac. & Rem. Code § 16.003(a).  The latest possible date that

Johnson's cause of action accrued was when his community supervision ended on June 28, 2018, which means he had until June 28, 2020 to file his lawsuit.  He did not file this suit until April 22, 2021, almost 10 months after the expiration of the limitations period.  To the extent that Johnson seeks to raise a claim of malicious prosecution, the statute of limitations was only one year, meaning the limitations period expired even earlier than for his other claims.  Tex. Civ. Prac. & Rem. Code § 16.002.  Finally, Johnson has raised no argument raising a basis for tolling, and dismissal of his claims against the Lavaca Defendants as time-barred is appropriate.  *See Jones, Inc.*, 339 F.3d at 366.

      *c.*    *OAG Defendants' Motion under Rules 12(b)(1), (5), and (6)*

In their motion to dismiss, the OAG Defendants first contend that this Court lacks jurisdiction to consider Johnson's claims because service of process was ineffective where Johnson attempted service by certified mail.  (D.E. 47 at 11).  Second, they argue that the claims against the Office of the Attorney General directly are barred by Eleventh Amendment immunity.  (*Id.* at 12-14).  Third, as to the claims against both the OAG and Sklar, they contend that the two-year statute of limitations applicable to all state personal injury claims and federal claims under §§ 1983 and 1985 has expired.  (*Id.* at 15).  Alternatively, the OAG Defendants argue on the merits that Johnson has failed to state a claim under § 1983, § 1985, or any state law, and his claims against Sklar are barred by Section 101.106(e) of the Texas Civil Practice & Remedies Code because he filed suit against both a governmental entity and one of its employees.  (*Id.* at 15-21).  Finally, the OAG Defendants argue that Sklar is entitled to qualified immunity.  (*Id.* at 21-22).

Johnson has not responded.

18

The OAG Defendants subsequently argued in a reply brief that dismissal was proper because Johnson did not oppose their motion to dismiss. (D.E. 70 at 2-4). They also noted that Johnson attempted to properly serve them by serving counsel, but that this still did not qualify as proper service. (*Id.* at 2, 4).

In a sur-reply, Johnson reiterated the arguments and claims in his original complaint. (D.E. 73 at 1).

Under Rule 12(b)(5), a party may move for dismissal for ineffective service of process. Fed. R. Civ. P. 12(b)(5). The plaintiff is responsible for having the summons and complaint served and has the burden of demonstrating its validity if challenged. Fed. R. Civ. P. 4(c)(1); *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). If the plaintiff fails to effectuate proper service of process on a defendant, the Court lacks personal jurisdiction over that defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002).

A state governmental organization may be served in the manner prescribed by that state's law for serving a summons on such a defendant. Fed. R. Civ. P. 4(j)(2)(A). Under Texas law, when serving a governmental unit, the proper recipient is the administrative head of the governmental unit being sued. Tex. Civ. Prac. & Rem. § 101.102(c).

The Eleventh Amendment bars suits in federal court against a state or one of its agencies, regardless of the relief requested, by anyone other than the federal government or another state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This immunity extends to arms or agencies of the state. *Mt. Healthy City Sch. Dist. Bd. Of*

*Educ. v. Doyle*, 429 U.S. 274, 280 (1977).   Eleventh Amendment immunity is a jurisdictional bar.   *U.S. v. Tex. Tech. Univ.*, 171 F.3d 279, 285 (5th Cir. 1999).   A state can lose its immunity in federal court either by consenting to suit or through a valid Congressional abrogation.   *Pennhurst*, 465 U.S. at 99.   However, in order to waive Eleventh Amendment immunity, the state must specifically indicate that it intends to subject itself to federal jurisdiction.   *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990).   Claims against a state agency are barred by immunity and should be dismissed for failure to state a claim.   *See, e.g., Cephus v. Tex. Health & Human Servs. Comm'n*, 149 F. Supp. 3d 818, 828 (S.D. Tex. 2015).

The Texas Office of the Attorney General has not consented to suit for claims under § 1983 or § 1985.   *See, e.g., Gallagher v. Dhillon*, No. 3:18-cv-2801-C-BH, 2020 WL 2737246 at *3 (N.D. Tex. May 7, 2020).   Congress has not abrogated immunity under either § 1983 or § 1985.   *See Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Early v. So. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs*, 252 F. App'x 698, 700 (5th Cir. 2007).

State law claims are also barred by Eleventh Amendment immunity because, in Texas, sovereign immunity deprives a court of subject-matter jurisdiction in suits against the state.   *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).   "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity."   *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).   A suit against a state official lawfully exercising [her] governmental functions is considered a suit against the state.   *Dir. of Dep't*

*of Ag. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265–66, 270 (Tex. 1980). The Texas Tort Claims Act contains a limited waiver of sovereign immunity, but this waiver applies only in state court.  Tex. Civ. Prac. & Rem. Code § 101.021; *Sherwinki v. Peterson*, 98 F.3d 849, 851-52 (5th Cir. 1996).

Like claims under § 1983, claims under § 1985 are subject to the forum state's general personal injury limitations period.  *Beckwith v. City of Houston*, 790 F. App'x 568, 575-76 (5th Cir. 2019).

Here, as an initial matter, the OAG Defendants argue that Johnson's second attempt to serve them was still improper because he served the complaint directly on their lawyer. Under Texas law, when serving a governmental unit, the proper recipient is the administrative head of the governmental unit being sued.  Tex. Civ. Prac. & Rem. § 101.102(c).  Thus, serving the complaint on a party's lawyer would not be proper service. Because the OAG Defendants have challenged service, Johnson has the burden of demonstrating the validity of his service.  *Carimi*, 959 F.2d at 1346.  However, he has not responded to this argument or otherwise submitted evidence of how he served the OAG Defendants in his second attempt.  Thus, the complaint could be dismissed under Rule 12(b)(5) for insufficient service of process.  However, the OAG Defendants have further raised arguments that support a dismissal with prejudice of Johnson's claims, and these grounds will also be addressed.

Johnson's claims against the OAG are barred by Eleventh Amendment immunity. As an agency of the state, claims against the OAG are barred in federal court unless brought by the federal government or another state, absent either the state's consent to suit or a

congressional abrogation of immunity. *Pennhurst*, 465 U.S. at 99-100; *Mt. Healthy*, 429 U.S. at 280. The OAG has not consented to suit in federal court. *See Gallagher*, 2020 WL 2737246 at *3. Further, Johnson's claims against the OAG are best construed as claims under § 1983 or § 1985 that his rights have been violated. (D.E. 1 at 34-36). Congress has not abrogated immunity under either of these statutes. *See Aguilar*, 160 F.3d at 1054; *Early*, 252 F. App'x at 700. Accordingly, Johnson's claims against the OAG should be dismissed for lack of jurisdiction because they are barred by Eleventh Amendment immunity.

Further, Johnson's claims against all OAG Defendants are barred by the statute of limitations. In the complaint, Johnson alleges that the conflict over child support began in September 2014. (D.E. 1 at 8). The last allegation regarding any action by any of the OAG Defendants was Johnson's receipt of a letter from Sklar in August 2016. (*Id.* at 12). Johnson's federal claims are best construed as arising under § 1983, and are therefore subject to the applicable statute of limitations for personal injury claims in Texas. (*Id.* at 34-36); *Owens*, 488 U.S. at 249-50. This means that Johnson had two years from the day his cause of action accrued to raise both his federal and state claims. Tex. Civ. Prac. & Rem. Code § 16.003(a). Based on the allegations in the complaint, the latest Johnson's claims against the OAG Defendants accrued was in August 2016, which means he had until August 2018 to file suit. He did not file this suit until April 22, 2021, which was 32 months after the expiration of the limitations period. Finally, Johnson has raised no argument raising a basis for tolling, and dismissal of his claims against the OAG Defendants as time-barred is appropriate. *See Jones, Inc.*, 339 F.3d at 366.

Because the OAG Defendants have demonstrated multiple valid grounds for dismissal, it is unnecessary to address their remaining alternative arguments for dismissal.

### d.  Clark's Motion Under Rules 12(b)(5) and (6)

In his motion to dismiss, Clark first contends that this Court lacks jurisdiction to consider Johnson's claims because service of process was ineffective where Johnson attempted service by certified mail.  (D.E. 60 at 9-10).  Second, he argues that the two-year statute of limitations applicable to all state personal injury claims and federal claims under §§ 1983 and 1985 has expired.  (*Id.* at 11).  Alternatively, Clark argues on the merits that Johnson's vague allegations fail to state a claim under § 1983, § 1985, or any state law, and his claims are barred by Section 101.106(f) of the Texas Civil Practice & Remedies Code because he could have filed suit against the government entity that employs Clark.  (*Id.* at 11-17).  Finally, Clark argues that he is entitled to qualified immunity.  (*Id.* at 17-19).

Johnson has not responded.

Clark subsequently argued in a reply brief that dismissal was proper because Johnson did not oppose his motion to dismiss.  (D.E. 70 at 2-4).  He also noted that Johnson attempted to properly serve him by serving counsel, but that this still did not qualify as proper service.  (*Id.* at 2, 4).

In a sur-reply, Johnson reiterated the arguments and claims in his original complaint.  (D.E. 73 at 1).

Here, as an initial matter, like the OAG Defendants, Clark challenges Johnson's second attempt to serve him as insufficient.  Because the sufficiency of service was

challenged, Johnson has the burden of demonstrating the validity of his service.  *Carimi*, 959 F.2d at 1346.  However, he has not responded to this argument or otherwise submitted evidence of how he served Clark in his second attempt.  Thus, the complaint could be dismissed under Rule 12(b)(5) for insufficient service of process.  However, Clark has further raised arguments that support a dismissal with prejudice of Johnson's claims, and these grounds will also be addressed.

Johnson's claims against Clark are barred by the statute of limitations.  The only claims against Clark relate to Johnson's arrest at the state courthouse on December 13, 2016.  (D.E. 1 at 17-18).  Johnson's federal claims are best construed as arising under § 1983, and are therefore subject to the applicable statute of limitations for personal injury claims in Texas.  (D.E. 1 at 44-45); *Owens*, 488 U.S. at 249-50.  This means that Johnson had two years from the day his cause of action accrued to raise both his federal and state claims.  Tex. Civ. Prac. & Rem. Code § 16.003(a).  Based on the allegations in the complaint, Johnson's claims against Clark accrued on December 13, 2016, meaning that he had until December 13, 2018, to file his lawsuit.  He did not file this suit until April 22, 2021, which was 28 months after the expiration of the limitations period.  Finally, Johnson has raised no argument raising a basis for tolling, and dismissal of his claims against Clark as time-barred is appropriate.  *See Jones, Inc.*, 339 F.3d at 366.

Because Clark has demonstrated multiple valid grounds for dismissal, it is unnecessary to address his remaining alternative arguments for dismissal.

### III. *SUA SPONTE* JURISDICTIONAL ANALYSIS

Here, Johnson's claims against Gibbs should be dismissed *sua sponte* for lack of subject-matter jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The Court is required to provide notice of its intention to dismiss and an opportunity to respond before dismissing *sua sponte* with prejudice. *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021). This memorandum provides such notice and an opportunity for Johnson to respond through the objection process.

As noted above, Johnson has not established diversity jurisdiction because, as alleged in the complaint, every party in this case is a citizen of Texas. (D.E. 1 at 2); *McLaughlin*, 376 F.3d at 353. Moreover, as with Yoakum, Johnson has not made any allegations that establish federal subject-matter jurisdiction for his claims against Gibbs. As alleged, although Johnson assigns several lofty titles to his claims including conspiracy to "interfere with [his] right to be free and not subject to anything injuring [him]," his claim is ultimately that Gibbs applied for and is seeking child support that she is not entitled to, and he raises only personal injury claims. (*See* D.E. 1 at 33-34). The only alleged connection that Gibbs has to any conspiracy is that she applied for child support and participated in the subsequent state court proceedings regarding child support. (*Id.* at 8-12). To the extent that his claims could be construed as § 1983 claims, Gibbs is the mother of Johnson's children and is not a state actor. Johnson has not alleged anything that could qualify as a close nexus between Gibbs and the state. (*See* D.E. 1 at 6-29); *Blum*, 457 U.S. at 1004. Further, Johnson has not alleged that the state has exercised any coercive power

25

or that Gibbs has exercised any power traditionally held by the state. *Blum*, 457 U.S. at 1004. Thus, the complaint does not establish that this Court has either diversity or subject-matter jurisdiction.

## IV. MOTION FOR LEAVE TO AMEND COMPLAINT (D.E. 63)

### a. *Allegations in the Amended Complaint*

The underlying factual allegations in Johnson's proposed amended complaint are the same as in his original complaint. (D.E. 63-1 at 16-47). However, he has added many legal citations, most importantly alleging that his claims against some of the defendants also arise under the Federal Trade Commission Act, 15 U.S.C. §§ 41-58 ("FTCA"), and the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"). (*See generally id.*).

### b. *Discussion*

In the motion for leave to amend, Johnson argues that he seeks leave to amend the complaint in order to: (1) remove a previously dismissed defendant, Vacarro; and (2) add claims against Yoakum and Sklar. (D.E. 63 at 1).

The OAG Defendants first respond that Johnson's proposed amended complaint does not comply with Federal Rule of Civil Procedure 8(a) because it does not contain a short and plain statement showing that Johnson is entitled to relief. (D.E. 67 at 2-3). Regardless, the OAG Defendants contend that the amended complaint is futile because it does not fix the problems that warranted the dismissal of his original complaint. (*Id.* at 3-5). Finally, they argue that allowing the amended complaint would prejudice them because it merely adds additional baseless claims. (*Id.* at 5).

26

Yoakum responds that Johnson's proposed amended complaint is futile because it does not clarify or allege new facts that would establish subject-matter jurisdiction.  (D.E. 68 at 2-3).  Further, Yoakum argues that it would be prejudiced by the new complaint because it merely adds new baseless claims and does not repair the defects in the original complaint.  (*Id.* at 3-4).

A court should freely give leave to amend pleadings when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Determining when justice so requires rests within the sound discretion of a district court.  *See Chitimacha Tribe of La. V. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982) (citations omitted).  A court's discretion to grant or deny leave is extremely limited by the bias of Rule 15(a) favoring amendment.  *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).  Leave to amend should not be denied unless there is a substantial reason to do so.  *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998).  There is a substantial reason to deny leave if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, et al., 3 F.3d 137, 139 (5th Cir. 1993).

The FDCPA defines "creditor" to include "any person who offers or extends credit creating a debt or to whom a debt is owed."  15 U.S.C. § 1692a(4).  It defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of

27

the transaction are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

It defines "debt collector" to include "any person who uses any instrumentality of interstate

commerce or the mails in any business the principal purpose of which is the collection of

any debts." *Id.* § 1692a(6). However, this does not include "any officer or employee of

the United States or any State to the extent that collecting or attempting to collect any debt

in the performance of his official duties," or any person attempting to serve legal process

in connection with the judicial enforcement of any debt. *Id.* § 1692a(6)(C), (D). Under

the act, debt collectors are prohibited from making various types of false or misleading

statements or from using unfair practices. *Id.* §§ 1692e, 1692f.

The FTCA prohibits certain unfair methods of competition and allows the Federal

Trade Commission to proceed against any person, partnership, or corporation that it

believes has been using any unfair method of competition or unfair or deceptive act or

practice in or affecting commerce. 15 U.S.C. § 45(a), (b). The FTCA does not contain a

private right of action. *See J.R. v. Walgreens Boots Alliance, Inc.*, 2021 WL 4859603 at

*8 (4th Cir. Oct. 19, 2021) (collecting cases); *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2

(5th Cir. 1978).

Here, Johnson's motion for leave to file an amended complaint should be denied

because the amendments he seeks to make are futile. The amended complaint does not

address any of the issues that led to the undersigned's above recommendations regarding

the dismissal of Johnson's claims against particular defendants. Specifically, the new

allegations in the amended complaint do nothing to establish: (1) that this Court has

subject-matter or diversity jurisdiction regarding his claims against Yoakum or Gibbs;

(2) that his claims against the Lavaca Defendants, the OAG Defendants, and Clark are barred by the statute of limitations; or (3) that his claims against the OAG are barred by Eleventh Amendment immunity. Johnson's proposed amended complaint is futile because it would still be dismissed on the same grounds as his original complaint.

To the extent that Johnson seeks to add claims under the FTCA and FDCPA, those attempts are also futile. As to the FTCA claims, Johnson cannot bring claims under the FTCA because it does not create a private cause of action. *Walgreens*, 2021 WL 4859603 at *8; *Fulton*, 580 F.2d at 1248 n.2. As to the FDCPA claims, Johnson does not have a "debt" as defined in the statute because his obligation to pay child support does not arise out of any transaction involving money, property, insurance, or services that are primarily for personal, family, or household purposes. *See* 15 U.S.C. § 1692a(5); *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994) (holding that a child support order is not a "debt" under the FDCPA). His child support responsibilities arise out of the fact that he is the father of two children, a fact that he never disputes in the 90 pages of his proposed amended complaint. Further, even if Johnson had a "debt" recognized by the FDCPA, he cannot sue any officer or employee of Texas who is attempting to collect that debt in the performance of their official duties. *Id.* § 1692a(6)(C). In short, Johnson has not alleged a viable claim under the FDCPA, and allowing him to add these claims in an amended complaint would be futile.

Finally, Johnson's motion for leave should also be denied as to the remaining defendants, William Old, III, and Calvin Albrecht, because the amendment would be futile. Johnson does not claim that his amended complaint adds any claims against these

29

defendants.  (D.E. 63 at 1).  Moreover, if Johnson did intend the FTCA and FDCPA claims to apply to these defendants, they would be futile for the same reasons noted above, and these defendants would be prejudiced by the addition of baseless claims to the complaint.

## V.    RECOMMENDATION

Accordingly, it is recommended that: (1) Yoakum's motion to dismiss (D.E. 18) be GRANTED and all claims against Yoakum be DISMISSED with prejudice; (2) the Lavaca Defendants' motion to dismiss (D.E. 44) be GRANTED and all claims against the Lavaca Defendants be DISMISSED with prejudice; (3) the OAG Defendants' motion to dismiss (D.E. 47) be GRANTED and all claims against the OAG Defendants be DISMISSED with prejudice; (4) Clark's motion to dismiss (D.E. 60) be GRANTED and all claims against him be DISMISSED with prejudice; (5) all claims against Gibbs be *sua sponte* DISMISSED with prejudice for lack of jurisdiction; and (6) Johnson's motion for leave to file an amended complaint (D.E. 63) be DENIED as futile.

Respectfully submitted on January 14, 2022.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).